[Cite as *State v. Allen*, 2022-Ohio-3599.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  1-21-59

    v.

JAMAREE ALLEN,                       O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2019 0261

**Judgment Affirmed**

Date of Decision:  October 11, 2022

APPEARANCES:

*William T. Cramer* for Appellant

*Jana E. Emerick* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Jamaree Allen ("Allen"), brings this appeal from the November 18, 2021 judgment of the Allen County Common Pleas Court sentencing him to an aggregate, indefinite prison term of 30-34 years after he pled guilty to an 8-count indictment and all the accompanying specifications. On appeal, Allen argues that his guilty pleas were not knowing, intelligent and voluntary, that he received ineffective assistance of counsel, and that the Reagan Tokes Law is unconstitutional.

*Background*

{¶2} On August 15, 2019, Allen was indicted for the following offenses: Count 1, participating in a criminal gang in violation of R.C. 2923.42(A), a second degree felony; Count 2, felonious assault in violation of R.C. 2903.11(A)(2), a second degree felony; Count 3, felonious assault in violation of R.C. 2903.11(A)(2), a second degree felony; Count 4, discharge of firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), a third degree felony; Count 5, improperly discharging a firearm at or into a habitation or a school safety zone in violation of R.C. 2923.161(A)(1), a second degree felony; Count 6, having weapons while under disability in violation of R.C. 2923.13(A)(2), a third degree felony; Count 7, improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), a fourth degree felony; and Count 8, carrying a concealed weapon in violation of R.C.

2923.12(A)(2), a fourth degree felony. In addition to the stated offenses, the first 5 counts in the indictment all had attached specifications as follows: Counts 1 through 5 carried 3-year firearm specifications pursuant to R.C. 2941.145(A); Counts 2, 3, and 5 all carried criminal gang activity specifications pursuant to R.C. 2941.142(A), *and* repeat violent offender specifications pursuant to R.C. 2941.149(A). Allen originally pled not guilty to the charges.

**{¶3}** After a lengthy pretrial process, a jury trial commenced on November 1, 2021. While the State was still conducting *voir dire*, court recessed for a break. However, before jury selection resumed, the parties reached a negotiated plea agreement wherein Allen agreed to plead guilty to all counts in the indictment and the accompanying specifications and, in exchange, the State agreed not to recommend greater than an aggregate 30-year prison term at sentencing. Notably, Allen's co-defendant had already been convicted by a jury and was sentenced to over 60 years in prison. *See State v. Wilson*, 3d Dist. Allen No. 1-20-46, 2022-Ohio-504. Allen's plea agreement was reduced to writing and signed by the parties.

**{¶4}** After being notified of the plea agreement, the trial court conducted a Crim.R. 11 hearing with Allen and determined that he was entering knowing, intelligent, and voluntary guilty pleas. The trial court ordered a pre-sentence investigation and sentencing was set for a later date.

{¶5} On November 17, 2021 the case proceeded to sentencing. Per the plea agreement, the State recommended an aggregate 30-year prison term. Allen, through his attorney, argued for a lesser-sentence. Ultimately the trial court ordered Allen to serve an indefinite prison term of 30-34 years. A judgment entry memorializing his sentence was filed November 18, 2021. It is from this judgment that he appeals, asserting the following assignments of error.

**Assignment of Error No. 1**
**Appellant's rights under the state and federal constitutions were violated by a guilty plea that was not knowing, intelligent, or voluntary.**

**Assignment of Error No. 2**
**Appellant was deprived of his state and federal constitutional rights to the effective assistance of counsel.**

**Assignment of Error No. 3**
**Indefinite prison terms imposed under the Reagan Tokes Law violate the jury trial guarantee, the doctrine of separation of powers, and due process principles under the federal and state constitutions.**

*First Assignment of Error*

{¶6} In his first assignment of error, Allen argues that his guilty pleas were not knowing, intelligent, and voluntary.

Relevant Authority

{¶7} "All guilty pleas must be made knowingly, voluntarily, and intelligently." *State v. Moll*, 3d Dist. Defiance Nos. 4-14-17 and 4-14-18, 2015-Ohio-926, ¶ 9, citing *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). "Failure on any

of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *Engle* at 527.

{¶8} Criminal Rule 11(C)(2), which governs guilty pleas for felony-level offenses, provides:

> **In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:**
>
> **(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.**
>
> **(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.**
>
> **(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.**

{¶9} A trial court must strictly comply with Crim.R. 11(C)(2)(c) and orally advise a defendant before accepting a felony plea that the plea waives the defendant's constitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 31. When a trial court fails to strictly comply with this duty, the defendant's

plea is invalid. *Id*. However, a trial court is only required to substantially comply with the non-constitutional notifications in Crim.R. 11(C)(2)(a) and (b). *Id.* at ¶ 14-17.

{¶10} An appellate court reviews the substantial-compliance standard based upon the totality of the circumstances surrounding the defendant's plea and determines whether he subjectively understood the implications of his plea and the rights he waived. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 20. "Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. * * * The test is whether the plea would have otherwise been made." *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

Analysis

{¶11} In his appeal, Allen does not contend that the trial court failed to comply with Crim.R. 11's provisions.[1] Rather, he contends that the trial court erred by accepting his guilty pleas without conducting an "*Alford* plea-type inquiry" because, he claims, he maintained his innocence throughout the plea process. More specifically, Allen argues that since he "maintained his innocence" the trial court should have conducted a more thorough plea colloquy, and that absent such a colloquy, his pleas were not knowing, intelligent, and voluntary.

---

[1] In fact, a review of the record shows that the trial court fully complied with all of the provisions of Crim.R. 11 when conducting the change-of-plea hearing.

{¶12} Contrary to Allen's argument on appeal, the record does not factually support his claim that he maintained his innocence throughout the plea process or that he was attempting to enter an *Alford* plea. Allen entered into a negotiated plea agreement during a break in *voir dire* before the jury was ever officially selected. The negotiated plea agreement was reduced to writing and signed by Allen. The written agreement, for guilty pleas to all the charges, was recited to the trial court and Allen indicated that he understood it.

{¶13} The trial court engaged in a thorough Crim.R. 11 dialogue with Allen, making sure he understood each individual charge, the specifications attached to the individual charges, and the maximum penalties for the charges and the specifications.[2] The trial court also ensured that Allen understood the constitutional and non-constitutional rights he was waving by entering his guilty pleas. When prompted, Allen repeatedly and affirmatively stated that he understood the agreement he was making and the rights he was waving.[3] In fact, Allen repeated he understood *five* times that by pleading *guilty* he was giving up the specified rights when asked. He never once mentioned innocence or that he did not commit the crimes in the indictment.

---

[2] Just before engaging in a Crim.R. 11 dialogue with Allen, the trial court told Allen to interrupt at any point if he did not understand anything.

[3] At one point, Allen did indicate that he did not understand what the trial court meant when the trial court stated that it had discretion on whether it would impose a prison term on a certain specification. Due to Allen's confusion, he was given further time to speak with his attorney. After Allen indicated that he understood what his attorney explained to him, the trial court offered further explanation but Allen indicated it was not necessary.

**{¶14}** Moreover, the trial court specifically told Allen that he did not

> **have to plead guilty. Your potential jurors should be back by now. We can carry on with the trial. But once we get done talking about everything if you still are desirous of entering into this plea agreement** *that's a complete admission of your guilt as to these offenses and with that comes a number of constitutional rights that you're giving up.*

(Emphasis added.) (Tr. at 152-53). Even with the trial court's statement, Allen proceeded with the plea hearing. This establishes that Allen did not maintain his innocence throughout the plea process, particularly when compounded with the written plea agreement, which said nothing about innocence.

**{¶15}** The only time that Allen stated anything at all that could be construed as challenging the process was during the following exchange with the trial court, late in the Crim.R. 11 dialogue:

> **THE COURT: Has anybody threatened you, coerced you, done anything you feel like is forcing you to plead here today?**
>
> **MR. ALLEN: No, Ma'am. I just feel it won't be fair, so I just –**
>
> **THE COURT: Okay. So you um are doing this of your own freewill?**
>
> **MR. ALLEN: Yes, Ma'am.**

(Tr. at 157).

**{¶16}** Allen cites this lone incident from the plea colloquy of him stating that he felt "it" would not be "fair" in an attempt to establish that he maintained his innocence through the plea process. However, a plain reading of Allen's minimal

words in this cited passage reveals nothing about "innocence." Rather, Allen questioned the "fairness" of something unspecified because he never spoke further on the topic at the hearing.

{¶17} However, Allen argues that his statement at the plea hearing questioning "fairness" was further explained in the pre-sentence investigation, wherein Allen stated that he was actually innocent but he felt he had to plead guilty because his attorney indicated he would not get a fair trial with an "all-white jury." We find this statement specious for multiple reasons. First, Allen's jury *had not even been selected* when he entered his guilty pleas, thus his statement in the pre-sentence investigation was factually inaccurate.

{¶18} Second, we emphasize that after a defendant has entered a plea and the plea has been accepted, courts are not required to inquire into a defendant's reasoning for pleading guilty despite later assertions of innocence. *State v. Wynn*, 1st Dist. Hamilton No. C-150051, 2015-Ohio-4646, ¶ 12. Crim.R. 32.1 provides a defendant with the opportunity to make a motion to withdraw a plea of before a sentence is imposed. Allen could have made such a motion but elected not to do so.

{¶19} Third, Allen's claims in his pre-sentence investigation conflict with his earlier, unequivocal statements at the plea hearing that he understood the possible penalties, the rights he was waving, and his statements that he understood that he was entering guilty pleas. We have previously held that statements made

*after* the plea hearing did not render a guilty plea to be less than knowing, intelligent and voluntary. *State v. Swoveland*, 3d Dist. Van Wert No. 15-17-14, 2018-Ohio-2875, ¶ 23. Thus any after-the-fact statements by Allen do not somehow retroactively produce a claim of innocence at the plea hearing.

**{¶20}** In sum, the record does not demonstrate that Allen's pleas were anything less than knowing, intelligent, and voluntary. Similarly, the record does not support Allen's claim on appeal that he was attempting to enter an *Alford* plea at the time he entered his guilty pleas.[4] Based on our review of the record, Allen's first assignment of error is overruled.

*Second Assignment of Error*

**{¶21}** In his second assignment of error, Allen argues that he received ineffective assistance of counsel.

Standard of Review

**{¶22}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or

---

[4] Notably, all pleas, including *Alford* pleas, must meet the general requirement that the defendant knowingly, voluntarily, and intelligently waived his right to a trial. *State v. Short*, 3d Dist. Logan No. 8-19-19, 2019-Ohio-3322, ¶ 11.

-10-

unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689; *State v. Harris*, 3d Dist. Allen No. 1-21-30, 2021-Ohio-4559, ¶ 6.

Analysis

**{¶23}** Allen contends that his counsel was ineffective in this case because his counsel purportedly had a conflict of interest. More specifically, Allen claims that in early 2021, he retained the attorney that he proceeded to trial with, Anthony VanNoy.[5] According to Allen, at the time he retained VanNoy, other individuals in the VanNoy law firm were representing Allen's co-defendant on appeal. Allen's co-defendant had been convicted at trial in October of 2020. *See State v. Wilson*, 3d Dist. Allen No. 1-20-46, 2022-Ohio-504. Importantly, Allen does not contend that VanNoy's law firm represented the co-defendant at the trial level.

**{¶24}** In reviewing Allen's argument, we note that a "conflict of interest" refers to a "circumstance[ ] in which regard for one duty tends to lead to disregard of another duty * * *." *State v. Hathaway*, 2d Dist. Greene No. 2014-CA-13, 2015-Ohio-5488, ¶ 14. The Supreme Court of Ohio has held:

> **A *possible* conflict of interest exists where the 'interests of the defendants *may* diverge at some point so as to place the attorney under inconsistent duties.' * * * *State v. Dillon* (1995), 74 Ohio St.3d 166, 168, 657 N.E.2d 273, 275-276, quoting *Cuyler*[ *v.*

---

[5] Prior to retaining VanNoy, Allen was represented by two appointed attorneys.

> ***Sullivan*], 446 U.S. [335,] 356, 100 S.Ct. [1708,] 1722, 64 L.Ed.2d [333,] 351-352, fn. 3. It follows, then, that an *actual* conflict of interest exists if, 'during the course of the representation, the defendants' interests *do* diverge with respect to a material factual or legal issue or to a course of action.' * * * *Id.* at 169, 657 N.E.2d at 276, quoting *Cuyler*, 446 U.S. at 356, 100 S.Ct. at 1722, 64 L.Ed.2d at 351–352, fn. 3; see, also, *Winkler*[ *v. Keane*], 7 F.3d [304,] 307 [(C.A. 2 1993)]. Indeed, we have said that a lawyer represents conflicting interests 'when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.' [*State v.*] *Manross*, 40 Ohio St.3d [180,] 182, 532 N.E.2d [735,] 738 [(1988)].**

(Emphasis sic.) *State v. Gillard*, 78 Ohio St.3d 548, 1997-Ohio-183, 679 N.E.2d 276 (1997).

**{¶25}** A defendant who claims he was denied the right to conflict-free counsel must demonstrate an *actual* conflict of interest that adversely affected his lawyer's performance. *State v. Wilson*, 3d Dist. Allen No. 1-20-46, 2022-Ohio-504, ¶ 137. A possible conflict is insufficient. *State v. Getsy*, 84 Ohio St.3d 180, 187 (1998).

**{¶26}** After reviewing the matter, we emphasize that the record before this Court contains *no indication whatsoever* that Allen's retained attorney, VanNoy, had *anything* to do with his co-defendant's case. In fact, VanNoy was not even retained by Allen until *after* Allen's codefendant was convicted.

**{¶27}** Allen *claims* that attorneys from VanNoy's firm worked on his codefendant's appeal, but we also have no indication of this in our record whatsoever. The only information our record contains is that Allen retained

VanNoy, and that Allen affirmatively stated that he was satisfied with VanNoy's counsel at the plea hearing. Because our record contains no information at all that could establish an actual conflict of interest for his attorney, let alone one that adversely impacted his attorney's performance, Allen's second assignment of error is overruled.

*Third Assignment of Error*

{¶28} In his third assignment of error, Allen argues that the Reagan Tokes Law is unconstitutional for violating the jury trial guarantee, for violating the separation of powers, and for violating due process principles.

Analysis

{¶29} Allen did not challenge the constitutionality of the Reagan Tokes Law before the trial court. For this reason, we apply the plain-error standard of review in this case. *State v. Ball*, 3d Dist. Allen No. 1-21-16, 2022-Ohio-1549, ¶ 57. "An error qualifies as 'plain error' only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise." *State v. Barnhart*, 3d Dist. Putnam No. 12-20-08, 2021-Ohio-2874, ¶ 8, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 245, 2002-Ohio-2126, ¶ 32.

{¶30} As this Court noted in *Ball*, challenges to the Reagan Tokes Law do not present a matter of first impression in this Court.[6] *Ball* at ¶ 59. "Since the

---

[6] Allen does acknowledge that he is primarily preserving this argument for further review.

indefinite sentencing provisions of the Reagan Tokes Law went into effect in March 2019, we have repeatedly been asked to address the constitutionality of these provisions. We have invariably concluded that the indefinite sentencing provisions of the Reagan Tokes Law do not * * * infringe on defendants' due process rights." *Id.* citing *e.g.*, *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 10-11; *State v. Hacker*, 3d Dist. Logan No. 8-20-01, 2020-Ohio-5048, ¶ 22; *State v. Wolfe*, 3d Dist. Union No. 14-21-16, 2022-Ohio-96, ¶ 21. We have also rejected constitutional challenges related to the jury trial issue and the separation of powers issue. *See Ball* at ¶ 63. On the basis of *Ball* and our prior precedent, this Court finds no merit to Allen's contention. Therefore, his third assignment of error is overruled.

*Conclusion*

{¶31} For the foregoing reasons Allen's assignments of error are overruled and the judgment and sentence of the Allen County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/jlr**